UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DUSTY LEE BOWMAN,

        Plaintiff,

v.                               Case No. 3:25-cv-188-MMH-LLL

RICKY D. DIXON, et al.,

        Defendants.

_____

## **ORDER OF DISMISSAL WITHOUT PREJUDICE**

Plaintiff Dusty Lee Bowman, an inmate of the Florida Department of Corrections (FDOC), is proceeding on a pro se Second Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 29; SAC), with exhibits (Docs. 29-1 through 29-19, 33). Bowman alleges violations of his First, Eighth, and Fourteenth Amendment rights during his incarceration at Union Correctional Institution (Union C.I.), between June 16, 2024 and July 16, 2025. Doc. 29 at 4, 49. He names the following individuals as Defendants: (1) Ricky D. Dixon, Superintendent/Secretary of the FDOC, in his individual and official capacity; (2) B.V. Reddish, Warden at Union C.I., in his individual capacity; (3) K. Tomlinson, Assistant Warden at Union C.I., in his individual capacity; (4) A. Llorens, Medical Director at Union C.I., in his individual capacity; (5) Jessica Putney, Mental Health Department at Reception Medical Center, in

her individual capacity; (6) Gloria Walden, Registered Nurse at Union C.I., in her official capacity; (7) S. Bias, Assistant Health Service Administrator at Union C.I., in his individual capacity; (8) Marcia G. Miller, Classification Law Officer at Union C.I., in her individual capacity; (9) Emily Thurman, Classification Law Officer at Union C.I., in her individual capacity; (10) Naomi Jones, Classification Law Officer at Union C.I., in her individual capacity; (11) R. Weems, Corrections Security Lieutenant at Union C.I., in his individual capacity; (12) A. Smith, Corrections Security Officer in Charge at Union C.I., in his individual capacity; (13) C. Randall, Corrections Security Officer in Charge at Union C.I., in his individual capacity; (14) W. Manning, Corrections Security Sergeant at Union C.I., in his individual capacity; (15) C. Mauldin, Corrections Security Officer at Union C.I., in his individual capacity; (16) C. Prescott, Corrections Security Officer at Union C.I., in his individual capacity; (17) S. Cotton, Corrections Security Sergeant at Union C.I., in his individual capacity; (18) Ashley Moody, (former) Attorney General of the State of Florida, in her individual and official capacity; (19) John or Jane Doe, Supervisor at Florida Department of Law Enforcement (FDLE), in his/her individual and official capacity; (20) D. Bass, Secretary's Consultant at FDOC, in his/her individual capacity; and (21) Michelle Nipper, Colonel Chief of Security at Union C.I., in her individual capacity. Id. at 2–10.

Bowman's predominant claim in the sixty-four-page SAC appears to be his claim of deliberate indifference to a serious medical need, in which only Putney and Mauldin appear to have been personally involved. See id. Bowman alleges that Putney provided only "minimal treatment" for the pain in his left thumb and right elbow. Id. at 20, 25–28. The treatment included "sporadic" ninety-day prescriptions for Ibuprofen, thirty pills of 600 mg, and a tube of analgesic balm that did not help with the pain. Id. Bowman asserts that the treatment was based only on "visual assessment," but also admits that Putney had previously ordered an X-ray of his left thumb as well as lab work to rule out rheumatoid arthritis. Id. at 26. According to Bowman, Putney saw him four times—on October 10, 2024; November 21, 2024; December 5, 2024; and January 23, 2025. On October 10, 2024, Bowman had a routine follow-up for his chronic obstructive pulmonary disease (COPD) at which he asked Putney for a front handcuff pass. Id. at 25–26. Her response was that it was not Centurion's policy to "provide inmates who have emergency inhalers with front handcuff passes." Id. At the next two visits, Bowman complained that his right elbow pain felt like nerve damage, and again requested a front handcuff pass to both alleviate the pain and allow for "ready access" to his COPD inhaler. Id. at 26–27, 43.  Putney responded: "For security reasons[,] [Centurion] won't let me give you a front handcuff pass[] or an elbow brace," "surgery we can't do,"

and "the only pain med[ication]s [we] give are psych[iatric] med[ication]s."[1] Id. at 27. On January 23, 2025, Bowman once again requested a front handcuff pass, an elbow brace, pain medications, and an MRI of his right elbow and left thumb/hands. Id. Bowman alleges that Putney failed "to provide essential adequate medical treatment," causing him unnecessary long-term pain and suffering. Id. at 20, 25, 28.

As to Mauldin, Bowman alleges that Mauldin maliciously withheld over-the-counter Ibuprofen and Tylenol "many times," and vindictively lied about not having access to or a supply of these medications. Id. at 35. According to Bowman, Mauldin was retaliating against him for using the grievance procedure against Mauldin and other officers. Id. at 34, 45. Bowman also alleges that the audio/video evidence documenting Mauldin's retaliatory conduct is unavailable for judicial review because of an unconstitutional departmental procedure allowing FDOC staff to block access to this evidence. Id. at 35.

To the extent Plaintiff alleges deliberate medical indifference claims against other Defendants, he premises his claims on Defendants' supervisory roles. See id. at 20–22 (Dixon); id. at 22–23, 44 (Reddish); id. at 23–24, 44

---

[1] It appears that at least as of June 30, 2025, Bowman has been taking psychotropic medications. See Doc. 29 at 43.

(Tomlinson); id. at 21–25 (Llorens); id. at 28–29, 44 (Bias); id. at 38–40, 45 (Moody); id. at 40, 45 (John/Jane Doe); id. at 41, 45 (Bass); id. at 42, 45 (Nipper). As a result of Defendants' deliberate indifference to his serious medical need, Bowman alleges he suffered "permanent damage in [his] left thumb joint area with restrictive movement"; nerve damage in his right elbow joint area; excruciating pain with heavy lifting and/or twisting of his arm behind his back; bouts of nausea, dizziness, and fatigue when the pain is extreme; and mental and emotional distress. Id. at 43.

After the Court directed Bowman to amend his original Complaint so he could "set forth his [deliberate medical indifference] claims sufficiently," Doc. 12 at 3, Bowman added new conditions of confinement claims pertaining to food and toiletries based on recent events. These new claims involve Defendants Prescott, Miller, Thurman, Jones, Weems, Smith, Randall, Manning, and Cotton. See Doc. 29. Specifically, Bowman alleges that during a wing cell shakedown in the early morning hours of May 28, 2025, Prescott intentionally removed Bowman's toiletries from the tier hand-rail and threw them on the tier floor by the back side of his cell door. Id. at 36. The same day, while Prescott was serving lunch in Bowman's wing, he gave Bowman his food tray and drink, but closed the food flap intentionally, leaving Bowman's toiletries on the floor outside the cell door. Id. Prescott refused to return the toiletries and told Bowman to stop creating a disturbance. Id. As Bowman

turned to his lunch, he "discovered a large wad of 'spit' (saliva) in his green beans and on part of his spork." Id. A few minutes later, when Prescott returned to collect the food trays, Bowman refused to return his tray and asked to speak with Weems about his food. Id. at 37. Prescott threatened Bowman that if he did not return his food tray by dinner time, Prescott "would put [Bowman] on 'loaf' for (14) days." Id. Later that day, after it became obvious that Weems was not going to see Bowman, he returned his food tray to another officer. Id. According to Bowman, Prescott had a "personal vendetta" over Bowman's criminal convictions, which led him to conspire with Manning to deprive Bowman of his rights. Id. at 35–36, 45.

As part of their "private conspiracy," Prescott and his superior Manning allegedly agreed to not feed Bowman dinner on May 28, 2025, when Prescott was serving the top tier and Manning was serving the bottom range. Id. at 33, 37, 44. Although Bowman informed Manning that Prescott had spit in his lunch earlier that day, Manning nevertheless allowed Prescott to serve dinner in his wing. Id. at 33. Manning also ignored Bowman when he kicked his cell door violently several times to alert the dorm security supervisors of Prescott's misconduct. Id. Manning again allowed Prescott to serve food in Bowman's wing on June 11, 12, and 18, 2025, "as a form of intimidation, harassment and oppression." Id. at 34.

6

Bowman alleges that Weems, Smith, and Randall applied a policy or custom of "turning a blind eye" to their subordinates Manning and Prescott's conspiracy, and reassigned Manning and Prescott to work around Bowman without first completing a thorough investigation. <u>Id.</u> at 31–33, 44. Similarly, Cotton applied a policy or custom of facilitating and condoning Prescott's conspiracy to serve dinner in Bowman's wing on July 4, 2025. <u>Id.</u> at 38, 45. While Bowman's allegations against Miller, Thurman, and Jones are not entirely clear, it appears that he contends the three of them conspired to block Bowman from retaining audio/video evidence to ensure it evaded court review. <u>Id.</u> at 29–31, 44.

As relief, Bowman requests: (1) a declaration that all Defendants violated his constitutional rights; (2) actual damages against Dixon, Reddish, Tomlinson, Llorens, Putney, Bias, Miller, Thurman, Jones, Weems, Mauldin, Bass, and Nipper; (3) punitive damages against Llorens, Putney, Bias, Miller, Thurman, Jones, Weems, Smith, Randall, Manning, Mauldin, Prescott, Cotton, Moody, John/Jane Doe, Bass, and Nipper; (4) a verbal admonishment to Moody and John/Jane Doe to uphold their oath of office; (5) a preliminary injunction for a front handcuff pass and a right elbow brace; and (6) a federal investigation and prosecution pursuant to 42 U.S.C. §§ 1985(2), (3) and 18 U.S.C. § 241. <u>See</u> Doc. 29 at 20, 43, 45–48.

7

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief.[2] See 28 U.S.C. § 1915(e)(2)(B). As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, and therefore courts apply the same standard in both contexts.[3] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam)

---

[2] The Court granted Bowman's request to proceed as a pauper. See Order (Doc. 16).

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

(citation omitted). Moreover, under Eleventh Circuit precedent, to prevail in a § 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While not required to include detailed factual allegations, a

complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (alternation and internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 679. In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

In assessing the SAC, the Court must read Bowman's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of

Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v.

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

*Gamble*, 429 U.S. 97, 104 (1976)). Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [*Farmer*, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45.

*Wade v. McDade*, 106 F.4th 1251, 1261 (11th Cir. 2024) (enumeration and emphasis omitted);[5] see also *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (recognizing that to prevail on a deliberate indifference claim, a plaintiff must show that he suffered "an objectively serious medical need," and that the

---

[5] For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to an inmate's serious medical need. *Wade*, 106 F.4th at 1255. In *Wade*, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in *Farmer* and clarified that courts in this circuit should apply the "subjective recklessness" standard "as used in the criminal law." Id. at 1253. The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in *Wade*, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with *Wade*, "they should continue to be cited as binding precedent." Id. at 1265 (Jordan, J., concurring).

defendant acted with deliberate indifference to that need, meaning that the defendant "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" (internal quotation marks and citations omitted))

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." <u>Swain</u>, 961 F.3d at 1285. Importantly, medical treatment gives rise to a constitutional violation "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Hoffer v. Sec'y, Fla. Dep't of Corr.</u>, 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. <u>Daniels v. Williams</u>, 474 U.S. 327, 330–31 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) ("As we held in <u>Daniels</u>, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Thus, a complaint that a medical provider has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Bingham</u>, 654 F.3d at 1176 (quotations and citation omitted). The Eleventh Circuit has also noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that

of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." <u>Bismark v. Fisher</u>, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989)). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Pursuant to the Court's screening obligation under the PLRA, the Court will dismiss Bowman's SAC for failure to state a claim. Construed liberally, the allegations against Putney are insufficient to state a claim of deliberate indifference to a serious medical need. Plaintiff alleges that Putney provided only "minimal treatment" for the pain in his left thumb and right elbow, which included prescriptions for Ibuprofen and analgesic balm.[6] Doc. 29 at 20, 25–28. Although he alleges that the treatment was based solely on "visual assessment" and did not include an MRI or CT scan, he admits that an X-ray of his left thumb was taken and lab work was done to rule out rheumatoid

---

[6] It appears that Bowman also received psychotropic medications and over-the-counter medications from other providers. <u>See</u> Doc. 29 at 35, 43.

arthritis. Id. at 26. Essentially, Bowman's deliberate indifference claim stems from his disagreement with Putney's course of treatment. But such disagreement is insufficient to state a plausible claim for relief. See Adams, 61 F.3d at 1545.

When an inmate has received medical care in prison, the inmate must do more than allege the care provided was "subpar or different from what [he] want[ed]." Keohane, 952 F.3d at 1266. Moreover, alleging "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a constitutional claim under § 1983. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Indeed, "federal courts are generally reluctant to second guess [prison physicians'] medical judgments." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985). The Eleventh Circuit has instructed that "[m]edical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris, 941 F.2d at 1505. Thus, allegations of medical negligence do not satisfy the stringent deliberate indifference standard. Estelle, 429 U.S. at 106. Accordingly, even if Putney's conduct could be considered negligent, the Constitution is not implicated by the negligent acts of prison officials. See Daniels, 474 U.S. at 330–31; Davidson, 474 U.S. at 348. As Bowman has not sufficiently alleged that he suffered a deprivation that was

15

objectively, sufficiently serious, or that Putney acted with subjective recklessness, his deliberate indifference claim against Putney will be dismissed.

For the same reasons, any claim of deliberate indifference against Mauldin for withholding over-the-counter Ibuprofen and Tylenol must be dismissed for failure to state a claim. To the extent Bowman attempts to bring a retaliation claim against Mauldin, this claim also fails. "The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Further, it is firmly established that an inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. Id.

> To establish a retaliation claim, a prisoner must demonstrate "that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation marks and citation omitted). [A plaintiff] can prevail on a retaliation claim if "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly

16

> retaliatory conduct would likely deter a person of
> ordinary firmness from engaging in such speech; and
> (3) there is a causal relationship between the
> retaliatory action and the protected speech." <u>Smith</u>,
> 532 F.3d at 1276.

<u>Williams v. Radford</u>, 64 F.4th 1185, 1192 (11th Cir. 2023) (internal citation modified). As to the third prong, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to establish the requisite motive. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." <u>Jemison v. Wise</u>, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted). Bowman does not include any well-pled allegations of fact to suggest that Mauldin's actions constitute retaliation for his constitutionally-protected speech. His assertions that Mauldin withheld over-the-counter medications from him "many times" in retaliation for his use of the grievance procedure are insufficient to state a retaliation claim.

Further, to the extent Bowman attempts to hold Dixon, Reddish, Tomlinson, Llorens, Bias, Moody, John/Jane Doe, Bass, and Nipper liable for the actions or omissions of their subordinates, liability under § 1983 may not be premised on a theory of vicarious liability. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003), <u>abrogated in part on other grounds by</u> <u>Randall</u>, 610 F.3d

17

at 709; see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) ("It is axiomatic, in [§] 1983 actions, that liability must be based on something more than a theory of respondeat superior."). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith v. DeKalb Cnty., 749 F.3d 1034, 1047–48 (11th Cir. 2014).

> Causation "may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." Id.[7] (alterations adopted) (internal quotation marks omitted). "A plaintiff can also show that the absence of a policy led to a violation of constitutional rights." Piazza,[8] 923 F.3d at 957. "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." Id. (citation omitted). And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates. Id. at 957-58.

Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022).

Bowman's allegations do not establish that Dixon, Reddish, Tomlinson, Llorens, Bias, Moody, John/Jane Doe, Bass, and Nipper personally

---

[7] Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999).

[8] Piazza v. Jefferson Cnty., 923 F.3d 947 (11th Cir. 2019).

participated in the alleged constitutional violations or that there was a causal connection between their actions and the alleged constitutional deprivations. Simply put, Bowman's allegations with respect to these Defendants are too general and conclusory to state a § 1983 claim based on their supervisory conduct. See Doc. 29 at 12–25, 28–29, 38–42, 44–45. To the extent Bowman alleges that Defendants were deliberately indifferent because they were involved in his grievances, "filing a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013)[9] (collecting cases).

Additionally, to the extent Bowman sues Dixon, Moody, and John/Jane Doe in their official capacities, the official-capacity claims against these Defendants must be dismissed for failure to state a claim. Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (quoting Monell v. New York City Dept. of Soc. Servs., 436 U.S

---

[9] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

658, 690 n.55 (1978)); Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Thus, a suit against Dixon in his official capacity is equivalent to suing the FDOC itself, but the FDOC is not a "person" within the meaning of § 1983. Gardner v. Riska, 444 F. App'x 353, 355 (11th Cir. 2011). Moreover, the FDOC is immune from § 1983 liability for damages. Zatler, 802 F.2d at 400. Although injunctive relief may be available against the FDOC, Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1511 (11th Cir. 1986), Bowman does not plausibly allege that any policy, custom, or practice of the FDOC was the moving force behind his alleged constitutional violations. See Graham, 473 U.S. at 166 ("[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks and citations omitted)); Monell, 436 U.S. at 693–94 (concluding that municipal liability under § 1983 occurs "when execution of a government's policy or custom" is "the moving force" behind the constitutional violation). Rather, Bowman's "policy or custom" allegations are nothing more than legal conclusions which "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678–79.[10]

---

[10] For similar reasons, Bowman's official-capacity claim against Walden must also be dismissed. Walden is employed by Centurion, LLC, which contracts with the FDOC to provide medical services to inmates. See Doc. 29 at 5. Where a claim of deliberate medical indifference is brought against a private contractor based on its

Similarly, to the extent Bowman sues Moody and John/Jane Doe in their official capacities, the suit is equivalent to suing the State of Florida. The Eleventh Amendment bars an action for monetary damages against a state under § 1983 unless waived by the state or Congress. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97–103 (1984), superseded by statute on other grounds; see also Nichols v. Ala. State Bar, 815 F.3d 726, 731 (11th Cir. 2016) (per curiam) ("Eleventh Amendment immunity bars suits by private individuals in federal court against a state unless the state has consented to be sued or has waived its immunity or Congress has abrogated the states' immunity. This bar exists whether the relief sought is legal or equitable." (internal quotation marks and citations omitted)). The State of Florida has not waived its Eleventh Amendment immunity, nor has Congress abrogated that immunity in § 1983 cases. See Wusiya v. Miami Beach, 614 F. App'x 389, 393 (11th Cir. 2015) (per curiam) ("Congress has not abrogated the states' sovereign immunity for purposes of section 1983 suits for damages, and Florida

---

functional equivalence to a government entity, liability under § 1983 cannot be based on a theory of respondeat superior. Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011) (citation omitted). Instead, the plaintiff must show that the entity "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right." Id. (citing Monell, 436 U.S. at 694). Here, Bowman does not plausibly allege that any constitutionally inadequate medical care was attributable to a Centurion policy or custom. Thus, the official-capacity claim against Walden must be dismissed. Notably, Bowman does not sue Walden in her individual capacity, stating that she "provided ethical treatment" on September 13, 2024, and seeks no damages against her. Doc. 29 at 28, 44, 46.

has not waived its immunity with regard to such suits." (citing <u>Gamble</u>, 779 F.2d at 1512, 1520)). Therefore, Bowman's official-capacity claims for monetary damages against these Defendants must be dismissed as barred by the Eleventh Amendment. <u>See, e.g.</u>, <u>Siskos v. Sec'y, Dep't of Corr.</u>, 817 F. App'x 760, 766 (11th Cir. 2020) (finding "the Florida AG, the State, and FDOC are all entities of the State of Florida," which "are immune from suit for money damages under the Eleventh Amendment"); <u>Tennant v. Florida</u>, 111 F. Supp. 2d 1326, 1330 (S.D. Fla. 2000) ("The Florida Department of Law Enforcement is an agency of the state of Florida. The FDLE is therefore covered by the Florida's Eleventh Amendment immunity." (internal citation omitted)). In addition, to the extent Bowman seeks injunctive relief against Moody and John/Jane Doe, the "policy or custom" allegations in the SAC are nothing more than legal conclusions that "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678–79. Therefore, the official-capacity claims against Dixon, Moody, and John/Jane Doe will be dismissed.

The unrelated conditions of confinement claims pertaining to Bowman's food and toiletries against Prescott, Miller, Thurman, Jones, Weems, Smith, Randall, Manning, and Cotton will also be dismissed for failure to state a claim. To state a plausible claim that his conditions of confinement violated the Eighth Amendment, an inmate must allege the named defendant was deliberately indifferent to conditions that were "sufficiently serious." <u>See</u>

Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004). Conditions of confinement are sufficiently serious to violate the Eighth Amendment only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." Id. at 1289. Allegations of merely harsh conditions or verbal threats do not state a plausible claim under the Eighth Amendment. Id.; see also Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008).

Here, Bowman alleges that in one day, Prescott deprived him of his toiletries, spat in his lunch, and threatened him that if he did not return his food tray by dinner time, Prescott "would put Plaintiff on 'loaf' for (14) days." See Doc. 29 at 35–37, 45; Doc. 29-5 at 3–4. These allegations are insufficient to state an Eighth Amendment claim. To the extent Bowman alleges he was temporarily deprived of his toiletries,[11] his allegations indicate mere discomfort and fail to suggest that the conditions of his confinement posed an unreasonable risk of serious injury to his future health or safety. See Woodson v. Whitehead, 673 F. App'x 931, 932 (11th Cir. 2016) ("Confinement without clothing (other than boxers), bedding, or hygienic materials for 72 hours during the months of April and August in Florida is not the type of extreme prison

---

[11] In a declaration attached to the SAC, Bowman states that another officer provided him with toiletries (a roll of toilet paper and a bar of soap) that same day. Doc. 29-5 at 4.

conditions that create a substantial risk of serious harm."); O'Connor v. Kelley, 644 F. App'x 928, 932 (11th Cir. 2016) (finding that the prisoner did not allege sufficient facts to suggest that the conditions of his confinement were cruel and unusual when he was placed on strip status for weeks).

To the extent Bowman alleges that he was deprived of his lunch and/or dinner[12] once, such deprivation is not a constitutional violation, "especially where there is no suggestion that [the inmate] suffered any adverse physical effects or that his health was jeopardized as a result of the single deprivation." Solomon v. Dep't of Fin. Serv., No. 5:11cv208/MCR/CJK, 2012 WL 1700838, at *2 (N.D. Fla. Apr. 9, 2012) (collecting cases), rep. & recommendation adopted by, 2012 WL 1700710, at *1 (N.D. Fla. May 15, 2012); see also Hoever v. Belleis, 703 F. App'x 908, 911 (11th Cir. 2017) (finding that the plaintiff did not state a plausible Eighth Amendment claim because he "did not assert that missing one meal worsened his health"). Indeed, "[u]nder the Eighth Amendment, a prisoner [is] only [] entitled to reasonably adequate food." Hernandez, 281 F. App'x at 865 (citing Hamm, 774 F.2d at 1575). "[F]eeding a prisoner a minimal amount of food for a limited number of days" does not violate the Eighth Amendment. Id. (citing Novak v. Beto, 453 F.2d 661, 665, 668 (5th Cir. 1971)

---

[12] In his declaration, Bowman states that Manning deprived him of dinner on the same day. Doc. 29-5 at 4.

(finding no Eighth Amendment violation when a prisoner in solitary confinement was on a 15-day restrictive diet, consisting of 2 slices of bread per day, unlimited water, and a full meal every 3 days)).

Likewise, to the extent Bowman premises any claim on Prescott's threat to put him on "loaf," such allegations do not state a constitutional violation. See Edwards v. Gilbert, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989) (stating that "verbal taunts . . . [h]owever distressing" cannot establish a claim under the Eighth Amendment); Hernandez, 281 F. App'x at 866 (finding "allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim"); Pete's Towing Co. v. City of Tampa, Fla., 648 F. Supp. 2d 1276, 1287 (M.D. Fla. 2009) ("[V]erbal threats and harassment are generally not actionable under § 1983." (citation omitted)); Barfield v. Hetzel, No. 2:11-cv-1114-WHA, 2015 WL 758490, at *4 (M.D. Ala. Feb. 23, 2015) ("Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation." (citations omitted)); Russell v. Walton Cnty. Sheriff's Dep't, No. 3:11-CV-5 (CAR), 2011 WL 794146, at *3 (M.D. Ga. Mar. 1, 2011) ("Threats, cursing, name-calling, and verbal abuse, while unprofessional and reprehensible, do not amount to the violation of a federal constitutional right." (citations omitted)). Thus, the

25

conditions Bowman describes do not rise to the level of cruel and unusual punishment.

Further, Bowman's allegations of a conspiracy between Prescott and Manning do not state a plausible claim for relief. To state a claim for conspiracy under § 1983, a plaintiff must allege that defendants "reached an understanding" to violate his constitutional rights. Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010). "[T]he linchpin for conspiracy is agreement, which presupposes communication." Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "It is not enough to simply aver in the complaint that a conspiracy existed." Allen v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 836, 840 (11th Cir. 2014) (quoting Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)). Here, Bowman offers no more than conclusory allegations that Defendants formed a conspiracy not to feed him dinner on the same day that Prescott allegedly spat in his lunch. But accepting Bowman's allegations as true, Manning was about to serve Bowman his dinner tray when Bowman started complaining that Prescott should not be there because of the incident earlier that day. See Doc. 29 at 33–34, 37, 44; Doc. 29-5 at 4. Thus, Bowman does not state a plausible § 1983 claim against Prescott and Manning.

To the extent Bowman alleges that Weems, Smith, Randall, and Cotton applied a policy or custom of condoning or "turning a blind eye" to their

subordinates Manning and Prescott's conspiracy of serving food in Bowman's wing, as the Court stated earlier, liability under § 1983 may not be premised on a theory of vicarious liability. Bowman's allegations do not support even an inference that Weems, Smith, Randall, and Cotton personally participated in the alleged constitutional violations or that there was a causal connection between their actions and the alleged constitutional deprivations. See Doc. 29 at 14–16, 31–33, 38. Thus, Bowman's allegations with respect to Weems, Smith, Randall, and Cotton are insufficient to state a § 1983 claim based on their supervisory conduct.

Similarly, Bowman's conclusory allegations of a conspiracy among Miller, Thurman, and Jones to block Bowman from retaining audio/video evidence are not only conclusory, but also seemingly unrelated to Bowman's other claims. See Doc. 29 at 29–31, 44. Therefore, these claims will be dismissed for failure to state a claim. Finally, insofar as Bowman requests a federal investigation and prosecution against Defendants pertaining to the claims in the SAC, as a private citizen, Bowman does not have "a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); see also Williams v. Univ. of Alabama Hosp. at Birmingham, 353 F. App'x 397, 398 (11th Cir. 2009) (affirming a district court's dismissal of a patient's claim against a hospital for

27

assault and bribery, and recognizing that "[t]he government, not private citizens, prosecutes crimes").

Based on the foregoing, in his SAC, Bowman fails to "state a claim to relief that is plausible on its face," and, as such, the SAC will be dismissed under the PLRA. Iqbal, 556 U.S. at 678. Bowman may refile his claims with factual allegations sufficient to support a claim for relief, but he should not join multiple, unrelated claims if he chooses to refile his claims. His filings must be made in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules. Notably, pro se litigants are subject to the same law and rules of court that govern other litigants who are represented by counsel. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

Therefore, it is now **ORDERED**:

1.    This case is **DISMISSED without prejudice**.

2.    The **Clerk of Court** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of October, 2025.

**MARCIA MORALES HOWARD**
Chief United States District Judge

28

Jax-11 9/24
c:     Dusty Lee Bowman, #130457